United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Michael A. Robinson and others,<br>Plaintiffs,<br><br>v.<br><br>True Value Food Stores, Inc. and<br>others, Defendants. | Civil Action No. 21-22847-Civ-Scola |

**Sealed Order Granting in Part *Ex Parte*
Temporary Restraining Order and Setting Hearing**

This matter is before the Court on the Plaintiffs' *Ex Parte* Application for Entry of Temporary Restraining Order and Seizure Order, Preliminary Injunction, Order Restraining Transfer of Assets, and Substitute Custodian Order (the "Application"). (ECF No. 16.) The Plaintiffs move *ex parte* for relief against the Defendants pursuant to 15 U.S.C. § 1116 and Fed. R. Civ. P. 65 for alleged violations of the Lanham Act, 15 U.S.C. §§ 1114, 1125(a). The Court has carefully reviewed the Application, the pertinent portions of the record, and the relevant legal authorities. The Court **grants in part** the Plaintiffs' Application. (**ECF No. 16**.)

1. **Factual Background**

Plaintiff Grabba, Inc. ("Grabba") is the registered owner of the following trademarks on the Principal Register of the United States Patent and Trademark Office (collectively, the "Grabba Marks"):

- U.S. Trademark Registration no. 4487117 for the mark GRABBA LEAF (WORD ONLY), in IC 34 for use with Cigar wraps.

- U.S. Trademark Registration no. 4461093 for the mark GRABBA LEAF (DESIGN PLUS WORDS), in IC 34 for use with Cigar wraps.

- U.S. Trademark Registration no. 4160203 for the mark GRABBA LEAF (DESIGN PLUS WORDS), in IC 34 for use with Cigar wraps.

(*See* ECF No. 16-4.) These marks are registered in International Class 34 and are used in connection with the manufacture and distribution of, among other things, cigar wraps. (*Id.*); (ECF No. 16-3 at ¶ 4.)

In October 2020, Plaintiffs learned that the Defendants had advertised, promoted, offered for sale, or distributed cigar wraps using labeling with counterfeits, reproductions, and colorable imitations of the Grabba Marks. (ECF No. 16-3 at ¶ 5.) This activity has taken place at True Value Food Stores, Inc., 21285 NW 37th Avenue, Miami Gardens, FL 33056. (*Id.*) The Defendants have not been authorized or licensed to use, reproduce, make, sell, or distribute counterfeits, reproductions, or colorable imitations of the Grabba Marks. (*Id.* at ¶ 3.) The Defendants have sold goods bearing the Grabba Marks in this District and the United States. (*See* ECF Nos. 16-1, 16-2.)

The Plaintiffs engaged two investigative firms, Marksmen Brand Protection Services and LSS Investigator, which sent investigators to purchase Grabba Leaf products from 21285 NW 37th Avenue, Miami Gardens, FL 33056 on multiple occasions in November 2020 and July 2021. (ECF No. 16-1 at 11–12; ECF No. 16-2 at 18–20; ECF No. 16-3 at ¶ 15.) Plaintiff Michael Robinson reviewed and visually inspected the products that the investigators purchased from the location above and determined that the products bear some or all of the Grabba Marks but contain slight discrepancies when compared to the genuine articles. (ECF No. 16-3 at ¶¶ 9–17.) Therefore, Robinson determined that the products were non-genuine, unauthorized versions of the Plaintiffs' products. (*Id.*)

## 2. Legal Standard

To obtain a temporary restraining order, a party must demonstrate "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005) (per curiam); *see also Levi Strauss & Co. v. Sunrise Int'l. Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995). Additionally, a court may only issue a temporary restraining order without notice to the adverse party or its attorney if:

(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition [and]
(B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

*See* Fed. R. Civ. P. 65(b). *Ex parte* temporary restraining orders "should be restricted to serving their underlying purpose of preserving the status quo and

preventing irreparable harm just so long as is necessary to hold a hearing and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cty.*, 415 U.S. 423, 439 (1974).

As to the requested seizure, 15 U.S.C. § 1116(d) provides for the seizure of counterfeit merchandise, the means of making counterfeit merchandise, and business records relating to such merchandise. *See* 15 U.S.C. § 1116(d). In particular, courts cannot order a seizure order unless it finds that "it clearly appears from specific facts that": "(1) an order other than an *ex parte* seizure order is not adequate to achieve the purposes of section 1114 of this title; (2) the applicant has not publicized the requested seizure; (3) the applicant is likely to succeed in his showing that the person against whom seizure would be ordered used a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services; (4) an immediate and irreparable injury will occur if such seizure is not ordered; (5) the matter to be seized will be located at the place identified in the application; (6) the harm to the applicant of denying the application outweighs the harm to the legitimate interests of the person against whom seizure would be ordered of granting the application; and (7) the person against whom seizure would be ordered, or persons acting in concert with such person, would destroy, move, hide, or otherwise make such matter inaccessible to the court, if the applicant were to proceed on notice to such person." *Gucci Am., Inc. v. JRP Invs., L.L.C.*, No. 15-61456-CIV-COHN, 2015 WL 11197748, at *1–2 (S.D. Fla. July 20, 2015) (quoting 15 U.S.C. § 1116(d)(4)(B)).

As to the Plaintiffs' requested asset freeze, under 15 U.S.C. § 1117(a), the Plaintiffs may be entitled to recover, as an equitable remedy, the illegal profits gained through the Defendants' distribution and sale of goods bearing counterfeits and infringements of the Grabba Marks. *See Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992) (quoting *Fuller Brush Products Co. v. Fuller Brush Co.*, 299 F.2d 772, 777 (7th Cir. 1962) ("An accounting of profits under § 1117(a) is not synonymous with an award of monetary damages: '[a]n accounting for profits . . . is an equitable remedy subject to the principles of equity.'")). Requesting equitable relief "invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief." *Levi Strauss & Co.*, 51 F.3d at 987 (citing *Federal Trade Commission v. United States Oil and Gas Corp.*, 748 F.2d 1431, 1433–34 (11th Cir. 1984)).

### 3. Preliminary Injunction and Asset Freeze

The declarations that the Plaintiffs submitted in support of their Application support the following conclusions of law:

A.  The Plaintiffs have demonstrated a substantial likelihood of success on the merits in proving that consumers are likely to be confused by the Defendants' manufacturing, advertisement, promotion, sale, offer for sale, and/or distribution of cigar wraps bearing counterfeits, reproductions, and/or colorable imitations of the Grabba Marks.

B.  Because of the infringement of the Grabba Marks, the Plaintiffs have demonstrated that they are likely to suffer an immediate and irreparable injury if a temporary restraining order is not granted. It appears from the facts set above, and as set forth in the Plaintiffs' Verified Complaint and the Declarations on file, that immediate and irreparable loss, damage, and injury will result to the Plaintiffs and to consumers before the Defendants can be heard in opposition unless the Plaintiffs' request for *ex parte* relief is granted:

- The Defendants have offered for sale cigar wraps bearing counterfeits and infringing copies of the Grabba Marks in violation of the Plaintiffs' rights;
- The Plaintiffs have a well-founded fear, and good cause exists to believe, that more counterfeit and infringing products bearing the Grabba Marks will appear in the marketplace; that consumers may be misled, confused, and disappointed by the quality of these products, resulting in the consequent injury to the Plaintiffs' reputation and goodwill; and that the Plaintiffs may suffer loss of sales for its genuine products;
- The Plaintiffs have well-founded fears, and good cause exists to believe, that if they proceed on notice to the Defendants in regard to the requested temporary restraining order, the Plaintiffs will suffer immediate and irreparable injury, loss, or damage.

C.  The balance of potential harm to the Defendants if a temporary restraining order and asset freeze order are issued is far outweighed by the potential harm to the Plaintiffs if they are not issued.

D.  The public interest favors issuance of the temporary restraining order to protect the Plaintiffs' trademark interests and to protect the public from being defrauded by the palming off of counterfeit products as the Plaintiffs' genuine products.

E.  In light of the inherently deceptive nature of the counterfeiting business, and the likelihood that the Defendants have violated federal trademark laws, the Plaintiffs have good reason to believe the Defendants will hide or transfer their ill-gotten assets beyond the

jurisdiction of this Court unless those assets are restrained.

### 4. Seizure

The Court finds that the Plaintiffs have not supported their burden to establish that a seizure is warranted under 15 U.S.C. § 1116(d)(4)(B). In particular, the Plaintiffs have not shown "that it *clearly appears from specific facts*" that § 1116(d)(4)(B)(vii) is met. *See* 15 U.S.C. § 1116(d)(4)(B)(vii) (specifying that a plaintiff must show that "the person against whom seizure would be ordered, or persons acting in concert with such person, would be likely to destroy, move, hide, or otherwise make such matter inaccessible to the court, if the applicant were to proceed on notice to such person"). Essentially, this prong is animated by the question "[c]ould the defendants be trusted to comply with the order of a Federal District Court?" *Lorillard Tobacco Co. v. Bisan Food Corp.*, 377 F.3d 313, 320 (3d Cir. 2004).

The Plaintiffs have given the Court no indication that the Defendants would not comply with the temporary restraining order absent a seizure. The Plaintiffs rely on generalized fears without supporting facts, arguing that "it is a virtual certainty" that the Defendants would hide the alleged counterfeit goods and that "it would be naïve to expect the Defendants to voluntarily surrender their counterfeit goods[.]" (ECF No. 16 at 7.) However, in an *ex parte* hearing, "fundamental fairness dictates that presumptions generally should not run against the absent party[.]" *Lorillard Tobacco*, 377 F.3d at 320. Therefore, generalized notions of how the Plaintiffs *think* the Defendants might act do not constitute "specific facts" from which it "clearly appears" that Section 1116(d)(4)(B)(vii) is met. While the Plaintiffs have put forth facts that demonstrate that the Defendants have taken efforts to hide the allegedly infringing products during the course of business, such as by putting the products behind a counter and by failing to give customers an itemized receipt (ECF No. 16-1 at 11–12), these facts do not support a finding that Section 1116(d)(4)(B)(vii) is met. Rather, as in *Gucci Am.*, the Plaintiffs have not shown that the Defendants have "previously failed to appear in court when required." *Gucci Am.*, 2015 WL 11197748, at *2; *see also VMR Prods. LLC v. Elecs. Cigarettes Outlet, LLC*, No. 12-23092, 2012 WL 12867956, at *3 (S.D. Fla. Sept. 11, 2012) (Graham, J.). Moreover, the Defendants have a fixed physical presence, and the infringing sales appear to constitute only a portion of their overall busines, meaning that the Defendants "have assets to support a potential money judgment, and much to lose should they misbehave[.]" *Gucci Am.*, 2015 WL 11197748, at *2. Therefore, the Court will **deny** the Plaintiffs' motion for a seizure order and substitute custodian order.

## 5. Conclusion

For the foregoing reasons, it is **ordered and adjudged** that the Plaintiffs' Application (**ECF No. 16**) is **granted in part** as follows:

> (1) Each of the Defendants, their officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order are hereby temporarily restrained:
>> i. From manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products, product packaging, or labeling bearing the Grabba Marks identified in above, or any confusingly similar marks, other than those actually manufactured, authorized, and distributed by the Plaintiffs;
>> ii. From communicating, directly or indirectly, with any person or persons (a) from whom the Defendants purchased or obtained products bearing the Grabba Marks identified above; or (b) to whom the Defendants sold or offered to sell such products; or (c) whom the Defendants know or reasonably believe to possess, control, or have access to any such products;
>> iii. From otherwise communicating, directly or indirectly, with any person(s) about this action, or the Plaintiffs' Application for this Order, except for the Defendants' attorneys;
>> iv. From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (a) any products or product packaging not manufactured or distributed by the Plaintiffs bearing the Grabba Marks, or any confusingly similar marks; or (b) any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any products or product packaging bearing the Grabba Marks or a colorable imitation thereof;
>> v. From knowingly instructing, aiding, or abetting any other person or business entity in engaging in any of the activities referred to in subparagraphs 1 through 4 above.

(2) Any financial institutions that hold funds on behalf of or derived from the Defendants', upon receipt of notice of this Order, shall immediately restrain and limit any withdrawals, transfers, or other movement of funds from any accounts controlled or owned by and of the Defendants; and the Defendants shall, within 5 days of being served with any notice as required under this Order, identify each and every financial account controlled or owned by them, and shall produce such information identifying these accounts to the Plaintiffs' counsel.

(3) Any financial account identified in paragraph 2 shall, within 5 days of receiving this Order, provide the Plaintiffs' counsel with all data which identifies the accounts restrained as well as an accounting of the funds in the restrained accounts. Such restraint of the accounts and the disclosure of the related financial institution account information shall be made without prior notice to the account owners or the financial institutions until further order of this Court;

(4) Any third party being served with a copy of this Order is ordered to preserve any and all records in its/their possession, custody, and/or control, including, but not limited to, all computer records, emails, email tracking histories, photographs, transactional records, and/or any records specifically identified below within its/their computer system in connection with the Defendants' use of the Grabba Marks at issue in this matter. Within 5 days from the receipt, any third party served with a copy of this Order is to provide Plaintiffs' counsel with a sworn affidavit detailing records, documents, and/or things preserved and confirming full compliance with this Order together with a copy of each document, photograph or thing identified in the Affidavit;

(5) Pursuant to Fed. R. Civ. P. 65(c), the Plaintiffs shall post security in the amount of $25,000.

(6) A hearing on the Plaintiffs' Motion for Preliminary Injunction shall take place on **October 6, 2021 at 8:30 a.m.**, at the Wilkie D. Ferguson Jr. U.S. Courthouse, 400 North Miami Avenue, Room 12-3, Miami, Florida 33128, at which time the Defendants and/or any other affected persons may challenge the appropriateness of this Order and move to dissolve the same and at which time the Court will hear argument on the Plaintiffs' requested preliminary injunction.

(7) Any response or opposition to the Plaintiffs' Motion for Preliminary Injunction must be filed and served on the Plaintiffs' counsel by **October 4, 2021**, and filed with the Court, along with Proof of Service. The above dates may be revised upon stipulation by all parties and approval of this Court.

(8) The Defendants are hereby on notice that failure to appear at the hearing may result in the imposition of a preliminary injunction against them pursuant to 15 U.S.C. § 1116(d), Fed. R. Civ. P. 65, 28 U.S.C. § 1651(a), and this Court's inherent authority.

(9) After the Plaintiffs' counsel has received confirmation from the financial institutions regarding the funds restrained as directed herein, the Plaintiffs shall serve a copy of the Complaint, the Application, and this Order on each Defendant.

**Done and ordered**, in chambers, in Miami, Florida, on September 24, 2021 at 2:00 p.m.

Robert N. Scola, Jr.
United States District Judge